YATES, Judge.
This case involves the termination of parental rights of the mother, R. F., as to her minor child. The Cullman County Department of Human Resources (“DHR”), in July 1997, petitioned for temporary custody of the child, while the 15-year-old mother was in DHR’s custody. The mother had been in foster care during her pregnancy. The juvenile court awarded DHR legal custody of the child, finding that the child was dependent and that it was in the child’s best interests to be placed in DHR’s custody.
DHR filed a report with the court on January 14, 1998, identifying the Individualized Servicing Plan (“ISP”) for the mother; identifying potential relative resources; and setting a target date for achieving a permanent placement plan by June 1998. On January 20,1998, the guardian ad litem for the child moved for termination of parental rights of both parents, alleging that the mother was a legal ward of DHR; that the father had been charged with statutory rape against the mother; that the mother had failed to adjust her circumstances to meet the needs of the child; and that it was in the child’s best interests to terminate parental rights of the mother and father. DHR immediately filed a response, denying the allegations and arguing that efforts at reunification had not been exhausted and, therefore, that termination of parental rights would be premature. A second report was submitted by DHR in April 1998, along with a motion to allow a change in placement, revising the original case plan from reunification with the mother to placement with a maternal aunt and her husband. The guardian ad litem filed an objection, requesting that the termination hearing proceed and arguing that a temporary placement with an-
*1094 other famñy would not be in the child’s best interests.
Following ore tenus proceedings, the court entered an order on June 23, 1998, finding that the child was dependent, citing § 26-18-5, Ala. Code 1975; that reasonable efforts toward reunification had failed; that the mother had failed to adjust her circumstances; that the mother was unwilling or unable to act as a parent; and that there were no viable alternatives to termination of parental rights. The court then terminated the mother’s parental rights, ordered DHR to petition for termination of the father’s parental rights, and denied DHR’s motion for a change in placement. The mother appeals.
This court has consistently held that the trial court must apply a two-pronged test when a nonparent institutes proceedings seeking the termination of parental rights. See K.M. v. Shelby County Dep’t of Human Resources, 628 So.2d 812 (Ala.Civ.App.1993).
In V.M v. State Dep’t of Human Resources, 710 So.2d 915 (Ala.Civ.App.1998), this court stated:
“In cases in which a nonparent has instituted termination proceedings, the trial court’s decision is governed by a two-part test. The first prong of this test requires the trial court to determine that the child is dependent, based upon clear and convincing evidence. The second prong of the test requires the trial court to consider and reject all alternatives to termination of parental rights in order to conclude that termination is in the best interests of the children. On appeal, the trial court’s judgment in this regard is presumed correct, and it will not be reversed by this court unless it is so unsupported by the evidence that it is plainly and palpably wrong.”
Id. at 919 (citations omitted).
The guardian ad litem, without the support of DHR, petitioned the court for termination of the parental rights of the mother and father. In fact, DHR filed an objection, arguing that termination of parental rights at that time would be premature, because, it said, the agency had not exhausted all options toward reunification. At trial, the guardian ad litem offered testimony by the executive director of the mother’s parenting class as support for her petition. The director testified that the mother had been removed from the parenting class, based on her failure to remain at a specific parenting class beyond the visitation period with her daughter. This, according to the director, indicated that the mother would not cooperate:
“[It] was a clear indication that she was not willing to work with us. [A]fter we had met and [the mother] herself had agreed and the fact that she would not stay for the classes that day, with everybody urging her to stay, that was a clear indication to us that she did not intend to meet any of the goals she had set for herself.”
However, the director also stated that the mother had consistently shown an interest in her child; had expressed a desire to have her daughter returned to her; and had explained those instances when she could not obtain transportation to attend the parenting class. The record indicates that the mother attended parenting classes both before and after the birth of her child and that she had consistently expressed an interest in her child and had worked with her caseworker toward reunification.
The mother’s DHR caseworker testified that, although DHR was considering termination of parental rights as an option, the agency wanted to give the mother an opportunity to improve and thought that the mother’s progress may have been hampered by her second pregnancy. The caseworker further testified that the mother had been very nurturing during her visits with her child; that she had shown that she knew how to care for the child; and that she had opposed having her parental rights terminated.
A juvenile probation officer who had been previously assigned to the mother *1095 testified that the mother, had been placed in detention when she was 14, because of truancy. The officer stated that the mother had remained under the county’s supervision after it was reported that the mother had misused money belonging to the family and “had been verbally aggressive and abusive toward her mother and grandmother.” At the time of trial, the mother’s case file had been closed because she was no longer on probation. We note that the probation officer testified that the mother had been cooperative during her probationary period; had tested negative for any drug use; and, when attending the GED program, was functioning on the college level. The probation officer’s assessment was that the mother was not improving herself; however, her only testimony to support this assessment was that the mother had returned to her family’s home, which also housed an 18-year-old cousin who may have been convicted of a sex crime, and that the mother was pregnant with her second child, having become pregnant shortly after giving birth to her first child.
At trial, the mother testified that she loved her daughter; that she had visited her child regularly since the child’s birth; and that she believed she could be responsible for giving the child proper care. She stated that she understood that she was a “young mother” but that she was trying to mature and to provide for her daughter. Specifically, the mother addressed the court, stating, “I love her and I think that — I mean, in time I’ll mature because I’m trying. I’m trying my best to do what it takes to get my little girl back, and I want her back.” The mother testified that she had returned to a second parenting class and planned to take the GED test as soon as she turned 17. She stated that if the child was placed with her she would “get a job and take care of her and give her what she needs and love her and support her.”
This court has long held that a parent has a prima facie right to the custody of his or her child and that that right can be overcome only by clear and convincing evidence indicating that it is in the child’s best interests to be removed from parental custody. See, L.A.T. v. State Dep’t of Human Resources, 588 So.2d 471 (Ala.Civ.App. 1991). Based on these legal principles and based on the record as a whole, we conclude that the trial court’s judgment must be reversed.
We note that this case does not involve neglect or child abuse by the mother. In fact, the record indicates that the mother has expressed only-love and concern for her child and that the child was placed in DHR’s custody solely because the mother herself had been placed in foster care and was still under DHR’s custody at the time of the child’s birth. In L.A.T.,, this court reversed the lower court’s, order terminating the parental rights of a young mother who was age 14 at the time of her child’s birth. We found in that case that the basis for termination did not involve abuse or neglect and that the mother had demonstrated only love and affection for her child. Id., 588 So.2d at 472. Similarly, in the instant case, the mother has continued to express her love for her child, and there is no evidence of abuse or neglect by the mother.
This court also notes that the decision to petition for termination of parental rights was initiated by the guardian ad litem and not by DHR. Specifically, DHR objected to the termination of the mother’s parental rights, and at trial maintained its position that, although termination was one of several options, DHR still hoped the child and her mother could be reunited. This court expressed a similar concern regarding a termination petition initiated by a trial court in V.M., 710 So.2d 915, stating:
“This court is concerned that the decision to file the petitions to terminate parental rights in these cases was made by the trial court, not by DHR. We are especially concerned that the trial court’s instruction to DHR to file the petitions came at a time when the record *1096 demonstrates that the mother was making progress toward meeting the goals DHR had established for her. Pursuant to the terms of a consent judgment in federal litigation, DHR has an affirmative duty to facilitate family reunification whenever that goal is possible. See generally R.C. v. Nachman, 969 F.Supp. 682 (M.D.Ala. 1997).”
Id. at 921. In V.M., this court reversed the order of the trial court, holding: “[W]e are not satisfied that all viable, less drastic alternatives to the termination of the mother’s parental rights have been investigated and considered.” Id. at 921.
After reviewing the record, we conclude that the trial court’s decision to terminate the mother’s parental rights was premature. The mother testified that she planned to obtain her GED certificate and to obtain gainful employment following the birth of her second child. Further, DHR testified that the mother’s progress toward meeting her goals may have been hampered because of her second pregnancy. This court held in K.M., 628 So.2d 812, that the juvenile court’s decision to terminate the parental rights of a young mother was “premature” and due to be reversed. There, the mother had been in foster care; was 15 at the time of her child’s birth; and, following the child’s birth, had acted irresponsibly on several occasions by running away from the foster home. Despite the mother’s behavior, this court found that the mother had developed a relationship with her child by visiting with her on a regular basis, caring for her by feeding and bathing her, and expressing her continued love and her desire not to lose her child. Id. at 814. As in that case, we find here that the trial court’s decision to terminate the mother’s parental rights was premature and was, therefore, plainly and palpably wrong. We can find no evidence to support the court’s determination that this mother is either unwilling or unable to act as a parent to her child; that reasonable efforts have been made toward reunification; or that there are no viable alternatives to the termination of the mother’s parental rights. Accordingly, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.