MURDOCK, Judge,
dissenting.
This court has held, in cases where DHR seeks to obtain a judicial termination of a parent’s rights with respect to his or her child, that
“DHR must present ‘evidence of recent attempts to locate viable alternatives in order to establish that termination of parental rights is the least drastic alternative.’ In light of the evidence that [a relative’s] present circumstances had not been investigated, the trial court’s decision to terminate the [parent’s] parental rights based upon the lack of viable alternatives was plainly and palpably wrong.”
V.M. v. State Dep’t of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998) (citations omitted; emphasis in original). This court also has held that DHR has the burden of initiating investigations and of proving unsuitability of alternative family resources. D.S.S. v. Clay County Dep’t of Human Res., 755 So.2d 584 (Ala.Civ.App.1999). It is not sufficient simply to contact a possible family resource and put the burden upon that person to begin the investigative process. See D.S.S., 755 So.2d at 590-91. Moreover, because of the fundamental importance of the family unit and family relationships, a court may not terminate parental rights without clear and convincing evidence that termination is the proper course. See Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (requiring “fundamentally fair procedures” that include a elear-and-convinc-ing evidentiary standard).
I do not believe the record in this case reflects sufficient recent efforts by DHR to locate and investigate possible alternatives to termination. I therefore dissent as to the affirmance of the termination of both the mother’s and the father’s parental rights.
From my review of the record, I also do not find sufficient evidence to uphold a finding that DHR has made a reasonable *693 effort to rehabilitate the father. Section 26-18-7(a)(6), Ala.Code 1975; V.M., 710 So.2d at 921. Even the trial court stopped short of finding that DHR had made reasonable efforts to rehabilitate the father, stating only that “DHR has made reasonable efforts to contact the mother and father to attempt to rehabilitate and train them.” Even if a reasonable effort “to contact” the father would satisfy the legal requirements, I do not find clear and convincing evidence of sufficient efforts even to contact the father.
This dependency/termination process began when DHR took custody of the child when the child was two and one-half months old. Until then, the child, the father, and the mother had resided with the father’s aunt.
The record reveals that DHR did little to involve the father in the dependency/termination process. The record indicates that the father’s address was neither listed in the original dependency petition nor provided during the course of the dependency/termination process. Although numerous summonses were sent to the mother during the course of that process, the record indicates that none was sent to the father. Additionally, the one letter that was sent by DHR inviting the father to attend an “ISP” meeting was returned because an incorrect address was used. The DHR caseworker attempts to explain the father’s lack of involvement in the process and his lack of participation in an “ISP” meeting by simply commenting, “He was never a legal father. He’s not on birth certificates or nothing.” From the outset of the process, however, all parties acknowledged that the appellant is the father.
Nor is there any dispute that the appellant loves the child and wants to be involved in his life. He testified: “I love my son because he is a junior, he’s mine. He[’s] got my blood. And I feel like at the time when they got him, I feel like we were taking care of him. He had all the checkups. He had [disposable diapers]. He had milk. We were taking care of him. He had a place to stay, a warm place to stay with my auntie. I feel like ... they shouldn’t have took him.”
The father also testified that although he had initially been going about getting his son back “the wrong way,” by “selling dope,” he also testified, “[I’ve been trying] to get me a job, work, try to get me an apartment or something since I’ve been in the drug court, ... be around no dope or nothing .like that.” The father also testified that he had not been around drugs in the preceding seven months and that as a condition of his participation in the “drug-court program,” he is under mandatory drug counseling and is required to take two random drug tests each week; he testified that he had not failed any of those drug tests. The father also testified that even if he had to go to prison as a result of his drug-court violation, he would have to serve a sentence of only about eight months.
Even the DHR caseworker’s testimony is equivocal regarding her opinion as to whether the appellant could become a good father to the child. She testified that she had observed the father’s interaction with his son during their visitations, that the father had interacted appropriately with his son, and that there was no doubt in her mind that the father loves his son. When asked whether the father would be capable of meeting the child’s needs upon the father’s release from jail, the caseworker responded, “That all depends. There’s a lot of steps that we have to take — that DHR has to take to establish that. I mean, he would have to follow through with basically the same things [the mother was asked to do], finding a job, taking parenting classes, that kind of thing.”
*694 The caseworker was right. DHR was obligated to take those “steps” and to “follow through” with a rehabilitation plan for the father, just as it did for the mother. It is because DHR has not done so that termination based on the record before us is inappropriate.
As this court stated in V.M.:
“This court fully recognizes the difficulty of cases such as this. Nevertheless, the termination of parental rights is a drastic measure, and we know of no means by which those rights, once terminated, can be reinstated. The evidence in [this case] ‘does not rise to the level of being so clear and convincing as to support termination of the parental rights of the [father], such action being the last and most extreme disposition permitted by statute.’ ”
V.M., 710 So.2d at 921 (quoting East v. Meadows, 529 So.2d 1010, 1012 (Ala.Civ.App.1988)).
Based on the foregoing, I dissent from overruling the application for rehearing in case number 2000032 and dissent from the affirmance in case number 2000530.
CRAWLEY, J., concurs.