CRAWLEY, Judge.
In these consolidated appeals, S.S. appeals from the juvenile court’s termination of her parental rights to T.D., and T.L.D. and T.B. appeal from the juvenile court’s termination of their parental rights to T.D.B. We affirm the juvenile court’s judgment as to S.S. and T.L.D.; we reverse the juvenile court’s judgment as to T.B. and remand the cause for further proceedings.
On Novembér 20, 2002, the Madison County Department of Human Resources (“the Department”) filed a petition to ter-mínate T.L.D.’s and T.B.’s parental rights to T.D.B. The Department alleged that T.D.B. had previously been adjudicated to be dependent,- that he remained dependent, and that T.L.D. and T.B. were unwilling or‘unable to discharge their responsibilities to and for T.D.B. The Department further alleged that all reasonable efforts to reunify T.L.D. and T.B. with T.D.B[ had failed and that less drastic alternatives to termination of parental rights were not available to serve T.DJB.’s best interests. On January 24, 2003, the Department filed a petition to terminate the parental rights of S.S. to T.D., making the same allegations; the father of T.D. was unknown., S.S. is the mother of T.L.D.
The juvenile court held consolidated hearings on both petitions — these cases were consolidated by agreement of the parties’ attorneys — on June 27, July 11, and September 4, 2003: On October 20, 2003, the juvenile court entered an order terminating T.L.D.’s and T.B.’s parental rights to T.D.B. that stated, in pertinent part:
“Based on the entiré record ... and upon clear and convincing evidence, competent, relevant, and material in nature, heard by the court ore tenus, the court finds that [T.D.B.] is a dependent child and has been' since previously declared to be by this court on October 4, 2002, and that the parents of [T.D.B.] are unable or unwilling . to discharge their responsibilities to and for [T.D.B.]. The court further finds that the conduct or condition of the parents is such as to render them unable to properly care for [T.D.B.], and that such conduct or condition is unlikely to change in the foreseeable future. The court .also finds as follows:
“1. The parents have not provided child support or other material sup *946 port for the use and benefit of [T.D.B.] during the time [T.D.B.] has been in the care of the Department or a person designated by the Department;
“2. The parents have failed to adjust their circumstances to meet the needs of [T.D.B.]; and
“3. In accordance with the requirements of Public Law 96-272, that reasonable efforts have been made by the Department, following the placement of [T.D.B.] into foster care, to bring about [T.D.B.’s] safe and speedy return to the home. However, the court finds no reasonable efforts exist to reunify [T.D.B.] and his parents and that return of [T.D.B.] to the home is contrary to the welfare of and not in the best interest of [T.D.B.]. Among the efforts the court finds the Department to have made in that regard include but are not limited to psychological evaluations of the parents, Individualized Service Plans, Visitation, Counseling, Parenting Skills and other services clearly set out in the testimony heard by this court.
“4. The Department has considered less drastic alternatives to filing a petition to terminate parental rights. Neither the Department nor this court believes that there are any alternatives less drastic than termination of parental rights available to serve the best interests of [T.D.B.]. Placement alternatives which were considered were determined not to be in [T.D.B.’s] best interests. Despite a diligent search, the Department has been unable to locate a suitable relative to assume custody of [T.D.B.].
“5. The best interests of [T.D.B.] require that the parental rights of [T.D.B.’s] parents be terminated and that [T.D.B.] be placed in the permanent legal custody of State of Alabama Department of Human Resources for the purposes of adoptive planning.”
The juvenile court entered a separate order that same day making the same findings as they applied to S.S., and, based on those findings, the juvenile court terminated the parental rights of S.S. to T.D. S.S. filed a notice of appeal on October 31, 2003; T.L.D. and T.B. filed notices of appeal on November 3, 2003.
On appeal, all parties raise the same arguments. They all contend (1) that there was not clear and convincing evidence presented by the Department to support the juvenile court’s termination of their parental rights, and (2) that the juvenile court erred by allowing the admission of deposition testimony that included the results of psychological testing that, they say, was remote and prejudicial, and that, they also say, was not properly administered or evaluated.
I. Whether There was Clear and Convincing Evidence to Support the Juvenile Court’s Termination of the Appellants’ Parental Rights
This court has observed the statutory criteria and applicable standard of review in termination-of-parental-rights cases as follows:
“We review [an] appeal [from a termination-of-parental-rights case] based upon the standards enunciated in H.M.W. v. Mobile County Department of Human Resources, 631 So.2d 1049, 1050 (Ala.Civ.App.1993) ...:
“‘Initially, we recognize that every parent has a prima facie right to the custody of his or her child. L.G. v. State Department of Human Resources, 603 So.2d 1100 (Ala.Civ.App.1992). This prima facie right can be overcome only by clear and convincing *947 evidence that the child’s best interests would be served by removing the child from the parent’s custody. Id. It is the consideration for the best interests of the child that lies at the heart of every proceeding to terminate parental rights.. L.G., supra.
‘“The trial court is given the authority to terminate parental rights if it finds from clear and convincing evidence that the parents are unable or unwilling to discharge their responsibilities to and for the children. [Section] 26-18-7, Ala.Code 1975. The trial court shall consider whether the parents suffer from emotional illness, mental illness, or mental deficiency, whether the parents have abandoned their children, whether the parents have problems with drugs or alcohol, and whether reasonable efforts to rehabilitate the parents have failed. [Section] 26-18-7(a), Ala.Code 1975. If the children are not in the physical custody of their parent or parents, the trial court shall also consider such circumstances as whether the parents have provided material needs for the children, whether the parents have maintained, regular, scheduled visits with the children, and whether the parents have adjusted their circumstances to meet the needs of the children according to agreements reached administratively or judicially. [Section] 26-18-7(b), Ala.Code 1975.
“‘In this.ease, [the Department] petitioned to terminate the parental rights. In such cases as this, where a nonparent is the petitioner, the trial court’s determination is governed by the application of a two-pronged test. Ex parte Beasley, 564 So.2d 950 (Ala.1990). First, the" trial court must conclude from clear and convincing evidence that the child is dependent. Id. Second, the court must consider and reject all other viable alternatives to termination of parental rights, so that it can conclude that the termination is in the child’s best interests. Beasley, supra. Additionally, the trial court’s determination on these matters is presumed correct on appeal, and we will not reverse absent a determination that the judgment of the trial court is ... unsupported by the evidence [so] as to be plainly and palpably wrong. L.G., supra.’”
R.L.B. v. Morgan County Dep’t of Human Res., 805 So.2d 721, 723-24 (Ala.Civ.App.2001)(emphasis removed).
A. S.S.
As to S.S. the evidence, in pertinent part, tended to show the following. S:S. was provided a psychological evaluation by Dr. Gail Gibson, a licensed professional counselor. Dr. Gibson testified at the termination hearing that she had tested S.S. in three areas: personality assessment; parenting skills; and cognitive or mental ability. Dr. Gibson stated that S.S. scored below average on the tests désigned to evaluate her cognitive or mental ability; that she could not perform the personality assessment on S.S. because S.S. had a third-grade reading level and a sixth-grade reading level was required to take the test; that an anxiety and depression inventory showed that S.S. suffered from severe anxiety and mild to severe depression; and that S.S. did not score well in a parenting stress index. Dr. Gibson provided the following opinion as to S.S.:
“It is my opinion that because of the intellectual or cognitive deficits that are severe and because of the severeness of her depression and her anxiety, I do not think [S.S.] has the social responsibility or the personal independence to safely meet the nurturing health and safety needs of a child.”
*948 Dr. Gibson further stated that she did not foresee any change to S.S.’s situation or abilities.
Jo Hanson, a supervisor with the Department, testified concerning some of the Department’s prior investigations of S.S. Hanson stated that the Department began investigating S.S. in 1993 for the alleged sexual abuse of three children in S.S.’s family — two nephews and one niece. Hanson stated that the Department’s investigation of those allegations against S.S. were “indicated.” Hanson further stated that two of S.S.’s children were later removed from her custody when a man raped one of the children and digitally penetrated the second; S.S. was said to have witnessed the rape, but she failed to report the incident. Hanson testified that there were other investigations by Paul Arnold and Lucy McClain that also involved sexual abuse.
Lucy McClain, an investigative interviewer with the Children’s Advocacy Center, testified that she first investigated S.S. in 2001 based upon a report of possible sexual abuse. McClain stated that a report had been received from T.B. stating that he had witnessed sexual abuse of two of S.S.’s children by S.S.’s husband, the children’s stepfather. McClain testified that one of the children was five years old and that S.S.’s husband had been having sexual intercourse with the child; McClain stated that S.S. had witnessed this sexual abuse but that she had failed to report it. McClain testified that charges were filed against S.S. but that those charges were dropped; that S.S.’s husband was convicted and imprisoned for two counts of sexual abuse in the first degree; and that the two children at issue were removed from S.S.’s custody.
Paul Arnold, a child abuse and neglect supervisor with the Department, testified that he investigated S.S. in 1999 based on an allegation that S.S. had been giving drugs to a four-year-old child to make her sleep so men could have sexual intercourse with the child for money. Arnold testified that the allegations were not “indicated”— the child’s drug screens were negative and there was no physical evidence that a rape had occurred. However, he stated that the investigation was “indicated” to the extent that the child at issue had been placed at a substantial risk of harm for sexual abuse because of S.S.’s actions.
Terita Rodriguez, a service caseworker with the Department, testified that she was involved with S.S. and her child T.D. at the time the Department had filed its petition to terminate S.S.’s parental rights and that she had been the ongoing caseworker in all the cases involved in these appeals. Rodriguez stated that the Department had offered several services to S.S., including individual counseling sessions, medical care, transportation, and employment services. Rodriguez stated that S.S. had high blood pressure, which caused T.D. to be born prematurely. There was other testimony provided indicating that T.D. was “medically fragile” and that he required special medical attention and treatment. Rodriguez stated that the Department explored relative placements for T.D. and that a placement with S.S.’s mother was not approved. Rodriguez testified that S.S. had not participated in individualized service plan (“ISP”) meetings, stating that she had remained quiet and asked no questions at the ISP meetings.
There was additional testimony presented by other agents of the Department that supported the testimony summarized above. S.S. was also unemployed and received her sole financial support from her aunt. Based upon the evidence that was presented to the juvenile court, we cannot say that its judgment was unsupported by the evidence; therefore, we conclude that *949 its judgment terminating S.S.’s parental rights to T.D. is due to be affirmed.
B. T.L.D.
As to T.L.D. the evidence, in pertinent part, tended to show the following. Dr. Gail Gibson also conducted a psychological evaluation on T.L.D.; T.L.D. was administered the same tests as S.S., and T.L.D. was provided a personality-assessment test because she had a higher reading ability than S.S. Dr. Gibson testified that T.L.D.’s intelligence quotient was in the low-functioning or mild-mental-dis order range; that she had severe cognitive deficits accompanied by low adaptive functioning; that she had minimal depression; and that she lacked insight, used bad judgment, and had little social responsibility. Dr. Gibson also stated that T.L.D. tested below average in all intelligence categories and that she had poor parenting skills. Dr. Gibson provided the following opinion as to T.L.D.:
“It is my opinion the because of [T.L.D.’s] severe intellectual deficits and her parenting déficits as well as her personality — not so much her personality, I would say, because I have no way of knowing whether there was psychopathology or not. On the anxiety and the depression she scored very low again indicating possible defensiveness. So, personality I was not really able to assess there except the fact that there was not the kind of cooperation perhaps that I could have gotten or would liked to have had. As far as her parenting skills, I would not feel that she has the child development knowledge, that she has the ability to relate “in a warm, close, caring, bonding, attaching way with a child. I think she would lack the insight and judgment to protect the safety and the health and to’ see a child thrive under her care.”
As with S.S., Dr. Gibson also stated that she did not foresee any change to T.L.D.’s situation or abilities. ■
Terita Rodriguez, the service caseworker involved in T.L.D.’s case, testified that T.L.D.’s child, T.D.B., came into the Department’s custody as a result of inadequate care provided by T.L.D. Rodriguez stated that at the time T.D.B. was born T.L.D. was in foster care; that after the birth of T.B.D. both TiL.D. and T.B.D. resided in the same foster home; and that that placement of T.L.D. and T.B.D. soon ended after the foster-parents asked that both be removed because of T.L.D.’s failure to stay at the foster home and care for T.B.D. Rodriguez further stated that after the separation of T.L.D. and' T.B.D. the Department offered T.L.D. a psychological evaluation and that, based on that evaluation, it offered services including counseling and services to assist with T.L.D.’s independent living and parenting skills in order- to reunify T.L.D. and T.B.D. Rodriguez testified that T.L.D. showed little success with the services offered to her; that she never accomplished independent living — she was said to have left -several placements that had been set -up for her to return to S.S.’s home; that T.L.D. had sometimes missed scheduled visitations with T.B.D. without calling in advance; that no relative placements were approved for T.B.D.; that T.L.D. had failed to participate in her scheduled ISP meetings; and that despite all the services offered to T.L.D., she continued putting her needs above those of T.B.D.
As was the case with S.S., there was additional testimony presented by other agents of the Department that supported -the testimony summarized above: T.L.D. was also unemployed and also received her sole financial support from her great aunt. Based upon the evidence' that was presented to the juvenile court, we cannot say that *950 its judgment was unsupported by the evidence; therefore, we conclude that its judgment terminating T.L.D.’s parental rights to T.B.D. is due to be affirmed.
C. T.B.
The evidence showed that, of the parties involved in this appeal, T.B. was the most involved with his child, T.B.D., but that he was offered the least amount of services by the Department.
Terita Rodriguez, the caseworker who was involved in the parties’ cases, testified that T.B. was present at T.B.D.’s birth; that he had the same visitation schedule with T.B.D. as did T.L.D. and that he kept all his visitation appointments and was more interactive with the child than T.L.D.; and that he wanted to know what the Department was doing for the child. Rodriguez also testified that T.B. participated in the ISP meetings, although they were scheduled for T.L.D.’s benefit; the same was true for parenting classes that were offered to T.L.D. — T.B. participated in them although they were not for his benefit. Rodriguez stated that the services provided to T.B. included a paternity test and home evaluations. Rodriguez confirmed that neither individual counseling nor independent-living services were offered to T.B. Both T.B.’s father and his mother were examined as relative placements for T.B.D., but those placements were not approved.
There was other testimony supporting the fact that T.B. was more than willing to take custody and provide care to T.B.D. T.B. receives some disability income, but he also works as a mechanic on the weekends to make additional money. T.B. has an apartment for which he makes timely payment of rent and utilities. He has purchased and taken gifts to T.B.D. during visits. He has not provided, nor has the Department requested, the payment of child support to benefit T.B.D. T.B.D. has no special health concerns.
While we note that there was testimony that brought the condition of T.B.’s apartment into question as it related to the apartment’s appropriateness to serve as the home for T.B.D., we conclude that the Department failed to show that it utilized reasonable efforts to assist T.B. with his living environment or to otherwise reunify T.B. and his child. The Department made arguments to the juvenile court and to this court that T.B. somehow was at fault for failing to request the services that could have been provided to him by the Department. We find this argument unpersuasive — it is the Department’s duty to offer those services, not the parent’s duty to affirmatively seek them out. See § 26-18-7(a)(6), Ala.Code 1975, and D.S.S. v. Clay County Dep’t of Human Res., 755 So.2d 584, 589 (Ala.Civ.App.1999)(“Section 26-18-7(a)(6) requires [the Department] to make an effort to rehabilitate a parent before it seeks to terminate his or her parental rights.”)(citing Ezekiel v. State Dep’t of Human Res., 562 So.2d 524 (Ala.Civ.App.1990)). Accordingly, we conclude that the juvenile court’s judgment terminating T.B.’s parental rights to T.B.D. is not supported by the evidence; therefore, we reverse that judgment and remand the cause to the juvenile court for it to enter an order that is consistent with this opinion.
II. Whether the Juvenile Court Erred in Admitting Deposition Testimony Relating to Psychological Evaluations of the Appellants
The appellants all argue that the juvenile court abused its discretion by admitting certain deposition testimony from doctors who performed psychological evaluations of the parties. Dr. Tenbrunsel performed psychological evaluations on S.S. and T.L.D.; Dr. Pope performed a *951 psychological evaluation on T.B. The appellants contend that admitting the depositions was an abuse of discretion because of the remoteness of the evidence and because the testing was not valid because both doctors used a psychometrist to assist in administering tests during the evaluation. Dr. Gibson had presented testimony during the juvenile court’s hearing that the use of psyehometrists in conducting such testing was controversial and that she would be skeptical of and cautious with test results in which a psychometrist was used.
Our supreme court has stated:
“Rulings on the materiality, relevancy, and remoteness of evidence are matters resting within the discretion of the trial court. Such rulings will not be disturbed ... unless there is a showing that the court’s ruling was a gross abuse of discretion.”
Moseley v. Lewis & Brackin, 583 So.2d 1297, 1300 (Ala.1991); see also AmSouth Bank, N.A. v. Spigener, 505 So.2d 1030 (Ala.1986); accord Rule 401, Ala. R. Evid., Advisory Committee’s Notes (“Relevancy remains a question over which the trial court has wide discretion.”).
We conclude that it is unnecessary to address T.B.’s argument as to this issue because we have already determined that the Department failed to show that it exercised reasonable efforts to reunify him and T.B.D. As to S.S. and T.L.D., we note that before the juvenile court admitted the deposition testimony of Dr. Tenbrunsel, the live testimony of Dr. Gibson had been presented, which supported the- juvenile court’s judgment. Accordingly, we conclude that this additional deposition testimony by Dr. Tenbrunsel was duplicative in nature and that its admission did not “probably injuriously affect[] substantial rights of the parties.” See Rule 45, Ala. R.App. P.
III. Conclusion
In summary, (1) we affirm the juvenile court’s termination of S.S.’s parental rights to T.D.; (2) we affirm the juvenile court’s termination of T.L.D.’s parental rights to T.B.D.; and: (3) we reverse the juvenile court’s termination of T.B.’s parental rights to T.B.D., and we remand the cause to the juvenile court for it to proceed in a manner that is consistent with this opinion.
2030138 — AFFIRMED.
2030139 — REVERSED AND REMANDED.
2030140 — AFFIRMED.
-YATES, P.J., and PITTMAN, J.; concur.
MURDOCK, J., concurs in part and ■ concurs in the result in part, with writing.
THOMPSON, J., concurs in part and dissents in part, with writing.