MOORE, Judge,
dissenting.
I respectfully dissent because I conclude that, under the facts of this case, termination of the mother’s parental rights was improper.
In this case, the trial court found as grounds for the termination that the mother was unable or unwilling to discharge her parental responsibilities to and for the children, that the mother had not been able to provide for the physical, emotional, and financial needs of the children, and that the mother had not been willing or able to provide a stable home for the children. However, the record in this case contains no indication that the mother had ever abandoned her children or that the mother had suffered or was suffering from any identified emotional illness or mental deficiency or that she had used or was using alcohol or controlled substances to the point that would render her unable to care for her children. There is no indication in the record that the mother had ever been convicted of any crime or that the mother’s parental rights to any other child had been involuntarily terminated. Thus, the record contains absolutely no evidence to support a termination of the mother’s parental rights based on those factors set forth in § 26-18-7(a)(1), (2), (4), (7), and (8), Ala.Code 1975.
*1193 The record in this case also fails to establish by clear and convincing evidence that termination of the mother’s parental rights was proper under the grounds set forth in § 26 — 18—7(a)(3) (“That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.”) or under § 26-18-7(a)(5) (“Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.”). The record does not establish by clear and convincing evidence that T.Ny.A.A. had been abused by the mother or that she had been injured under such circumstances as would indicate that T.Ny.A.A.’s injuries had resulted from the mother’s intentional or willful neglect. The only testimony offered on this issue indicates that T.Ny.A.A. was alone with F.A. at the time she received her injuries. The mother blamed F.A. for the child’s injuries, and she claimed that, when questioned, F.A. had been evasive in his explanation of the events surrounding the injuries. It is undisputed that F.A. had a history of domestic violence against the mother. Additionally, there is no evidence indicating that the mother had a history of any abuse against F.A. or against her children.
The record also contains no evidence indicating that the mother neglected T.Ny. A.A. or attempted to hide her injuries after learning of those injuries. Before the child’s injuries occurred in August 2005, the mother had been taking the child to the doctor for treatment of skin and breathing issues, and, upon discovery of the child’s injuries in August 2005, the mother immediately took the child to the hospital.
Moreover, DHR found no evidence indicating that the mother’s other three children had ever been physically abused by either the mother or F.A. For all that appears in the record, the mother had no reason to know that, by leaving child with F.A. that night, she would be placing the child at risk of harm. Because the evidence tends to indicate that the mother was not involved in causing the child’s injuries and that the child’s injuries were not the result of the mother’s willful neglect, it does not support the termination of the mother’s parental rights.
Moreover, because the children were not in the physical custody of the mother, those factors set forth in § 26-18-7(b) were also relevant to DHR’s termination petitions. The evidence presented at the termination hearing establishes by clear and convincing evidence that the mother paid child support as requested by DHR; thus, she provided for the material needs of the children while they were in foster care. See § 26 — 18—7(b)(1). The evidence also established that the mother did not miss a single visit with the children in two years and that, during that two-year period, she maintained consistent contact and communication with the children. See § 26 — 18—7(b)(2) and (3). Finally, the evidence established that, as requested by DHR, the mother obtained employment, paid child support, and attended parenting classes. In addition, the mother eventually obtained housing. This evidence indicates that the mother adjusted her circumstances to meet the needs of her children in accordance with the agreements reached with DHR. See § 26-18-7(b).
I do not intend to suggest that, if DHR fails to adduce clear and convincing evidence of the statutory factors set out in § 26-18-7, the juvenile court may not ter- *1194 mínate parental rights. By stating that “the court shall consider, ... but not be limited to” the statutory factors, the statute itself indicates that a juvenile court may terminate parental rights if other factors, proven by clear and convincing evidence, establish one of the alternative grounds for termination of a parent’s parental rights. See Miller v. Alabama Dep’t of Pensions & Sec., 374 So.2d 1370 (Ala.Civ.App.1979). However, in this case, I conclude that DHR did not present clear and convincing evidence of any other factor justifying termination of the mother’s parental rights.
DHR criticized the mother for failing to follow through with psychological counseling. I note that the evidence is disputed as to whether DHR ever communicated to the mother a need for a psychological evaluation or for counseling.[11] In any case, the mother voluntarily sought counseling on her own. However, even then, DHR did not present evidence as to any psychological issues identified in that counseling session or any recommendation made by that counselor for further treatment. As a result, the record is totally devoid of any evidence indicating that the mother suffered from some psychological condition that interfered with her parenting abilities. The record also contains no evidence indicating that the mother needed counseling to effectively parent her children or that her failure to complete a counseling course prevented her from safely resuming her parental responsibilities. In the absence of such evidence, the juvenile court could not have reasonably terminated the mother’s parental rights based on her failure to follow through with counseling.
DHR also criticized the mother for failing to obtain stable housing. The evidence was undisputed that, at the time of the termination hearing, the mother had obtained her own housing. Before that time, the mother had resided with her nephew and the children’s maternal grandmother because she could not afford her own housing. Poverty alone is not enough to warrant the termination of parental rights. C.B. v. State Dep’t of Human Res., 782 So.2d 781 (Ala.Civ.App.1998); and A.J.H.T. v. K.O.H., 983 So.2d 394, 406 (Ala.Civ.App.2007). See also In re Hickman, 489 So.2d 601, 602-03 (Ala.Civ.App.1986) (stating that “[pjoverty and limited mentality of a mother, in the absence of abuse or lack of caring, should not be the criteria for taking away a wanted child from the parents” (quoted in Bowman v. State Dep’t of Human Res., 534 So.2d 304, 306 (Ala.Civ.App.1988), and D.A. v. Calhoun County Dep’t of Human Res., 892 So.2d 963, 968 (Ala.Civ.App.2004))); and K.M. v. Shelby County Dep’t of Human Res., 628 So.2d 812, 813 (Ala.Civ.App. 1993). Moreover, once DHR identified the mother’s lack of income or the mother’s lack of stable housing as an obstacle to reunification of the family, it had a duty to use reasonable efforts to help the mother overcome those obstacles. See H.H. v. Baldwin County Dep’t of Human Res., 989 So.2d 1094, 1105 (Ala.Civ.App.2008) (plurality opinion). However, the record contains no evidence indicating that DHR did anything to assist the mother in obtaining suitable employment or suitable housing. Because of the lack of reasonable effort on the part of DHR to assist the mother with her housing and income problems, the juvenile court could not terminate the moth *1195 er’s parental rights based on those factors. See H.H., supra.
Finally, DHR criticized the mother for apparently continuing a relationship with F.A. after the children were removed from her custody, even though that relationship involved domestic violence. If DHR had identified domestic violence or the mother’s propensity to remain in abusive relationships as an obstacle to the mother’s regaining custody of her children, DHR should have offered the mother services aimed at resolving those issues. H.H., supra. However, DHR did not specifically offer the mother any programs aimed at ending those problems; this failure violated DHR’s statutory duty. See § 12-15-65(g)(3), Ala.Code 1975; J.B. v. Jefferson County Dep’t of Human Res., 869 So.2d at 481; D.S.S. v. Clay County Dep’t of Human Res., 755 So.2d 584, 589 (Ala.Civ.App.1999); and C.B. v. State Dep’t of Human Res., 782 So.2d at 785. Despite the lack of assistance, the mother testified at the hearing that she was no longer involved with F.A. and that she would seek a protection order or call the police if F.A. came around her or the children.
Although DHR utterly failed to address the problems it identified at trial as barriers to family reunification, by the time of the termination hearing the mother had shown significant progress in rehabilitating herself. She had maintained employment, had regularly paid child support, had located housing, and had extricated herself from an abusive relationship. In similar situations, this court has concluded that a judgment terminating parental rights must be reversed. See, e.g., V.M. v. State Dep’t of Human Res., 710 So.2d 915 (Ala.Civ.App.1998); R.F. v. State Dep’t of Human Res., 740 So.2d 1093 (Ala.Civ.App.1999); D.O. v. Calhoun County Dep’t of Human Res., 859 So.2d 439 (Ala.Civ.App.2003); and P.H. v. Madison County Dep’t of Human Res., 937 So.2d 525 (Ala.Civ.App.2006).
The State may not terminate a parent’s parental rights unless that parent is unable or unwilling to discharge his or her parental responsibilities to and for the child or unless the conduct or condition of the parent is such as to render him or her unable to properly care for the child and that conduct or condition is unlikely to change in the foreseeable future. § 26-18-7(a). In this case, I find no clear and convincing evidence of a condition or conduct on the part of the mother that prohibits return of the children to her custody. Additionally, I find no clear and convincing evidence indicating that the mother is unwilling or unable to discharge her responsibilities to and for the children. I would, therefore, reverse the juvenile court’s judgment.

. As noted in the main opinion, the record contains none of the individualized service plans created by DHR for the mother. The mother, however, produced at the hearing one of the individualized service plans created for her by DHR. According to the trial testimony, that individualized service plan made no mention of any counseling requirement.