THIGPEN, Judge.
This case involves the termination of parental rights.
In December 1992, the Cleburne County Department of Human Resources (DHR) filed petitions seeking to terminate the parental rights of M.S. (father) and D.S. (mother) to their three minor children. The petitions alleged that the father was “unable or unwilling to comply with the requests of the Department of Human Resources for the return of said minor ehild[ren] to his care, custody and control,” and that the mother was unable to care for the minor children. The petitions also alleged that parental, relative, or long-term foster care was not in the children’s best interests. Following ore ten- *586 us proceedings, the trial court found that the children were dependent, terminated the parental rights of the parents, awarded permanent custody of all three children to DHR. Only the father appeals.
The record reveals that the children were removed from the custody of the parents in February 1991, and that the parents were divorced later that year. The father has since remarried, and, at the time of these proceedings, had two additional children.
The father raises four issues on appeal: (1) whether the trial court erred in terminating his parental rights “without a finding of unfitness”; (2) whether there was clear and convincing evidence that there was no viable alternative to the termination of parental rights; (3) whether the trial court erred in failing to allow the father’s attorney to view files maintained by DHR; and (4) whether the trial court erred in granting only a five-day continuance on the father’s motion.
The termination of one’s parental rights is an extreme matter that is not considered lightly, and, where the State seeks to terminate parental rights, the trial court must apply a two-pronged test. The trial court must find that the child is dependent; then, the trial court must find that there are no viable alternatives to the termination of parental rights. Ex parte Beasley, 564 So.2d 950 (Ala.1990); see also B.O. v. Department of Human Resources, 628 So.2d 805 (Ala. Civ. App.1993). A natural parent’s prima facie right to the custody of his or her child can be overcome only by clear and convincing evidence that permanent removal from the parent’s custody serves the best interests of the child. L.N. v. State Department of Human Resources, 619 So.2d 928 (Ala.Civ.App.1993). In determining the child’s best interests, for purposes of termination of parental rights, the trial court must consider whether the parents are physically, financially, and mentally able to care for the child. J.L.B. v. State Department of Human Resources, 608 So.2d 1367 (Ala.Civ.App.1992).
To support his first issue, the father cites Ex parte Terry, 494 So.2d 628 (Ala. 1986), and several other cases, for the proposition that a finding of unfitness is a prerequisite to the termination of his parental rights. Those cases involve custody disputes between parents and nonparents, and they do not involve the termination of parental rights. The father’s reliance on those cases is misplaced, and his characterization of the posture of this case is simply incorrect.
A trial court may terminate parental rights
“[i]f the court finds from clear and convincing evidence, competent, material and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such condition is unlikely to change in the foreseeable future....”
Ala.Code 1975, § 26-18-7(a). Although a finding in that regard may be synonymous with a finding of unfitness, Anonymous v. Anonymous, 504 So.2d 289 (Ala.Civ.App.1986), there is no absolute requirement for a trial court to specifically find a parent to be unfit in these proceedings.
Next, the father argues that because he has remarried and he now has the responsibility of two additional children, there was a viable alternative to the termination of his parental rights.
A trial court may consider several factors determining whether a parent is unable to discharge responsibilities to and for the child, including whether reasonable efforts by DHR directed toward rehabilitation of the parent have failed. Ala.Code 1975, § 26-18-7(a)(6). In cases such as this, where the child is not in the physical custody of the parent, the trial court may also consider whether the parent has: 1) failed to provide for the material needs of the child or to pay a reasonable portion of the child’s support; 2) faded to maintain regular visits pursuant to a plan with DHR; 3) failed to maintain consistent communication; or 4) demonstrated a lack of effort to adjust his circumstances to meet the needs of the child pursuant to an agreement or plan devised by DHR or a judicial review. Ala.Code 1975, § 26-18-7(b).
*587 The trial court made the following findings regarding the father:
“The natural father lacks the ability to properly care for the subject child[ren] in that he has failed to comply with the ‘D.H.R.-treatment-plan(s)’, same having been modified on several occasions to accommodate his ‘new-situation(s)’ (e.g. new home, new job, new spouse, etc.). Specifically, he has failed in his rehabilitative efforts; has failed to pay child support on a regular basis. As of the trial date, he continues to be unable to provide his child[ren] with a stable home and stable income; has an unstable marriage; and has no apparent ability to provide stable care and supervision for his child[ren].”
Ample evidence within the record supports the trial court’s findings. The record is replete with evidence that the father could not provide a stable environment for the three children. The father resided at numerous addresses in Alabama and in Georgia during the two years before the final hearing. At the July hearing, the father testified that he had been separated from his present wife for six to seven months on several occasions during their two-year marriage, and there was evidence that the father had returned to his present wife’s home only one week before that hearing. The father also testified that during the previous two years, he had been employed at a total of seven jobs, and that he had been employed at his present job only approximately two months.
Teresa Ward, a DHR ease worker, indicated that since the children had been removed from the parents’ custody, the father’s interest in the children had wavered. She testified that “[a]t times he would seem interested and then at other times he would go several months without any contact with [DHR] or with the kids.” Ward further testified that there was an attempt to place the children in the father’s custody following a home evaluation in March 1992. Ward testified that DHR had attempted to place the children in the father’s home at the end of that school year. Ward stated, however, that everything “fell through” because the father moved without giving notice and owing approximately $1000 in back rent. Ward further testified that while the father was residing in Georgia, DHR officials had requested that the Georgia officials conduct a home study, but that the Georgia officials were unable to locate the father with the address he had provided.
The father testified that he had paid no child support in 1993, an uncertain amount in 1992, pursuant to an income withholding order, and only $600 in 1991. At the time of the final hearing in July 1993, the father had not seen or had contact with the children in approximately seven months.
The record contains a summary of the DHR file, apparently obtained at the request of the court. This summary indicated that the father visited his children for only 6 of 22 scheduled visits in 1991, and that he failed to see his children at all from June 6, 1991, to January 21, 1992. The report further indicated that the father faded to appear for appointments regarding his children, failed to respond to letters requesting meetings, and failed to advise DHR of his location. Ample record evidence supports the trial court’s finding that the father could not properly care for the children, and that rehabilitative efforts were unsuccessful because of his instability and uncooperative nature. Additionally, the record indicates that there were no available relative resources that were possible alternatives to the termination of parental rights.
Next, the father contends that the trial court erred in not allowing his attorney to view certain files maintained by DHR. The record reflects that during Ward’s cross-examination, the mother’s attorney requested to look at the files maintained by DHR. Thereafter, the father’s counsel also requested access to the DHR files. The records may be discoverable when they contain information relevant to the adjudicatory phase of the proceeding. Ex parte Smith, 555 So.2d 1106 (Ala.Civ.App.1989).
The record reveals that a DHR summary was filed and was available for use by the father’s attorney to ascertain the information and opinions that DHR used in deciding to seek termination of the father’s parental rights. A DHR case worker testified at *588 the July hearing, and a state DHR adoption worker testified at the March 1993 hearing. On each occasion, cross-examination by the father’s attorney occurred. Any portion of the DHR information that was disputed by the father could have been addressed during cross-examination or during the father’s own testimony. There was ample relevant information available to the father’s attorney, even without the requested file. Furthermore, the father and his counsel were present at a hearing in March 1993, and the father and his newly appointed counsel were present at the July hearing. The information the father sought from the DHR file was provided to the court in the form of testimony, including the father’s own testimony. The file information was merely cumulative to the "testimony and information to which the father has had access for the more than two years’ duration of these proceedings. On appeal, the father has failed to show any prejudice suffered by not having the requested file. Therefore, any failure in refusing to allow the father’s counsel to view the file was, at most, harmless error. Rule 45, A.R.App.P.
Last, the father contends that the trial court erred in granting his newly appointed attorney only a five-day continuance prior to the final hearing in July. A trial court’s ruling on a motion for a continuance is discretionary, and it will not be disturbed on appeal absent an abuse of discretion. See Jim Walter Resources, Inc. v. Bentley, 560 So.2d 1072 (Ala.Civ.App.1990). In the instant case, apparently the attorney representing the father was appointed a few days before the hearing set for July 21, 1993. Upon the father’s motion, a continuance was granted until July 26,1993. It is noteworthy that the father was aware that this situation had been under judicial scrutiny for over two years prior to the July 1993 hearing. The father had been present with different counsel at the March 1993 hearing, where the trial court announced that the new hearing would be set for May 6. The record discloses numerous changes of the hearing date before the final hearing was held on July 26, 1993. The trial court was well positioned to consider the complexity of the case and the time needed for adequate preparation. We find no abuse of discretion in the trial court’s decision to grant only a five-day continuance.
Based on the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.