On Rehearing Ex Mero Motu
The opinion of July 18, 1997, is withdrawn and the following opinion is substituted therefor:
In September 1996, the Montgomery County Department of Human Resources (the "Department") filed a petition to terminate the parental rights of W.F. (the "mother") and D.J. (the "father"), the natural parents of A.F. and D.F. (the "children"), born *Page 485 
February 22, 1993, and September 11, 1994, respectively. After a hearing on the petition, the juvenile court terminated the parental rights of both the mother and the father. Both the mother and the father appeal.[1]
The father filed a brief on appeal, which the mother adopted. They raise only one issue on appeal: whether the court had before it clear and convincing evidence that termination would be in the children's best interests. After reviewing the evidence in this case, we affirm the termination of both parents' parental rights.
 "The right to maintain family integrity is a fundamental right protected by the due process requirements of the Constitution. Pursuant to this right, Alabama courts recognize a presumption that parental custody will be in the best interests of a child. This prima facie right of a parent to the custody of his or her child can only be overcome by clear and convincing evidence that permanent removal from the parent's custody would be in the child's best interest, but the primary consideration in any proceeding to terminate parental rights is always the best interests and welfare of the child. In making that determination, the court must consider whether the parent is physically, financially, and mentally able to care for the child. If the court finds from clear and convincing evidence that the parent is unable or unwilling to discharge his or her responsibilities to and for the child, his or her parental rights can then be terminated, pursuant to [Ala. Code 1975,] § 26-18-7(a). . . ."
Bowman v. State Department of Human Resources, 534 So.2d 304,305 (Ala.Civ.App. 1988) (citations omitted). The juvenile court's decision to terminate parental rights, which is based on evidence presented ore tenus, is presumed correct and will be reversed only if the record demonstrates that the decision is not supported by the evidence and is plainly and palpably wrong. R.B. v. State Department of Human Resources,669 So.2d 187 (Ala.Civ.App. 1995).
To terminate parental rights, the juvenile court must first determine from clear and convincing evidence that the child or children are dependent. S.F. v. Department of Human Resources,680 So.2d 346 (Ala.Civ.App. 1996). The court must then determine that there exists no alternative to termination.L.A.G. v. State Department of Human Resources, 681 So.2d 596
(Ala.Civ.App. 1996).[2]
A court may terminate parental rights when "the parents of [the] child are unable or unwilling to discharge their responsibilities to and for the child . . . and such conduct or condition is unlikely to change in the foreseeable future." Ala. Code 1975, § 26-18-7(a). The juvenile court's order in this case tracks that language. The court found that "clear and convincing evidence has been established that the aforesaid children are dependent and that their natural parents are unwilling or unable to discharge their parental responsibilities to and for said children; and, it is unlikely, under the circumstances, that such conditions will change in the foreseeable future." Section 26-18-7(a)(1)-(6) and (b)(1)-(4) list factors the trial court may consider in making the difficult decision to terminate parental rights. Among these factors are the mental deficiency of a parent, §26-18-7(a)(1), the excessive use of alcohol by a parent, §26-18-7(a)(1), the abuse of the child by a parent, §26-18-7(a)(2), that reasonable efforts at rehabilitation of the parent have failed, § 26-18-7(a)(6), and the lack of effort by the parent to adjust his or her circumstances to the needs *Page 486 
of the child in accordance with agreements reached with caseworkers. § 26-18-7(b)(4). After reviewing the testimony and the exhibits reviewed by the court, we agree that the court had before it clear and convincing evidence that termination would be in the best interests of these children.
The evidence before the court consisted of the reports filed with the court by DHR caseworkers, the testimony of Department caseworkers, and the testimony of both parents. The youngest child, D.F., has been hospitalized three times for problems associated with failure to thrive syndrome. The eldest daughter, A.F., when she entered foster care at the age of 2, was not potty-trained, could speak only three intelligible words, could not eat with a spoon, and could not drink from a cup.
The reports from DHR caseworkers indicated that D.F. was malnourished when she entered foster care. The reports noted that she had not been receiving proper feedings and that her bottles were unclean. In addition, the reports indicated that the child was returned from visits with the mother without being fed or having had her diaper changed, although bottles and diaper changing supplies were sent by the foster mother. The reports also stated that A.F. had been evaluated and had been described as mildly delayed both intellectually and physically. In addition, according to the reports, A.F. was found to have moderately low adaptive behavior skills.
According to the reports, the mother is mildly mentally retarded and has a mixed personality disorder. The reports state that the mother does not appear to grasp simple concepts presented at parenting classes. The reports also indicate that the mother has an inability to care for her children, that she takes her frustration out on her children, and that she fails to respond appropriately to her children's needs. As a specific example of the mother's failure to respond to her children's needs, the report mentions one visit during which A.F. indicated that she had to go to the bathroom; instead of taking the child to the ladies' room, the mother ignored A.F., and the father took the child to the men's room. The reports also mention her comments concerning the children. For example, according to the reports, she once told A.F. that she would not visit her anymore because she was bad, and she told the case-worker to "beat her to death if she gives you any trouble." The reports indicate that the opinion of the caseworker is that the mother cannot be an effective parent without continual support and supervision.
The reports indicate that the father has a problem with alcohol. In addition, the reports state that the court referral officer found the father to be in denial about his problem. According to the reports, the father becomes angry and defensive when the subject of his alcohol problem or treatment for that problem is broached. The reports also indicate that he provided care for A.F. while intoxicated and that he caused a disturbance at the hospital when D.F. was last admitted. The reports admit that the father is the more nurturing parent and that he plays and interacts with the children in an appropriate manner; however, the reports also mention that the father began staying in his room, complaining of illness, during the later visits. The report indicates that the caseworker believes that the father is suffering from a hangover during these visits. The reports indicate that, despite DHR's best attempts at reunification, the father has refused to complete parenting classes or alcohol treatment of any kind.
The testimony of the caseworkers, Sandra Allen and Charles Evans, Jr., established that the parents had been reluctant to adapt their circumstances to the needs of their children and that attempts to rehabilitate them had failed because of this lack of effort. The record does not contain a copy of the Department's "individualized service plan" for the family; however, the parents do not argue that the Department's plan was inappropriate. The caseworkers both testified that more than once they had smelled alcohol on the father's breath, and Mr. Evans testified that on one occasion he had seen the father drink alcohol. In addition, Mr. Evans testified that, during later periods of visitation with the children, the father had often remained in his bedroom and appeared either ill or hungover. Mr. Evans also voiced concern *Page 487 
about the possible interaction between alcohol and the father's seizure medication. He also testified that, despite recommendations that the father attend counseling for his alcohol problem, the father steadfastly denied that any problem existed and refused to attend substance-abuse counseling.
The father testified that he did not complete the parenting classes because, he said, he knew how to be a parent. He also testified that he drinks three beers per day, three to five times per week. The father admitted that he takes seizure medication; however, he testified that his doctor has not warned him that he should not drink while on this medication.
The caseworkers testified that the mother showed little empathy for her children and could not interact with them; in fact, some testimony indicated that her only interaction with A.F. was negative. Mr. Evans testified that the mother had lost custody of five other children in the past. The mother was described as mildly retarded, and Ms. Allen testified that she doubted the mother could care for the children without continual assistance. In addition, both caseworkers mentioned that she often spoke to the children in a derogatory and belittling manner. Like the father, the mother failed to complete the parenting classes recommended by the Department.
Because of the parents' lack of effort to adjust their circumstances to meet the needs of their children and because the exhibits reviewed by the court support a finding of dependency, we agree that the evidence warrants termination of the parental rights of both parents.
OPINION OF JULY 18, 1997, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
[1] The mother filed her notice of appeal within 14 days of the juvenile court's judgment, as required by Rule 28, Ala. R. Juv. P. The father's notice of appeal, although not filed within 14 days of the court's judgment, was filed within 14 days of the mother's notice of appeal and is appropriate under Rule 4(a)(2), Ala. R.App. P. ("If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days (two weeks) of the date on which the first notice of appeal was filed. . . .").
[2] The parents challenge the finding that the children are dependent; however, they do not challenge the trial court's determination that no alternative to termination exists. The testimony at the hearing established that the Department had investigated several relative resources and found them either unwilling to take the children or unsuitable as alternatives.