On Rehearing Ex Mero Motu
The court's opinion of July 26, 2002, is withdrawn, and the following opinion is substituted therefor.
Etowah County Department of Human Resources ("DHR") filed a petition to terminate the parental rights of S.C.D. ("the mother") as to R.T. and A.B. ("the children"). Following a one-day trial, the juvenile court terminated the mother's parental rights. The mother appeals.
The mother argues[1] that the juvenile court erred (1) in not granting her motion to continue the trial; (2) in admitting what she contends to be inadmissible evidence; (3) in terminating her parental rights as the result of a proceeding at which her attorney provided what she contends to be ineffective assistance of counsel; and (4) in entering a judgment that she contends is not supported by the evidence.
 I. Motion to Continue
We will first address the mother's argument that the trial court erred by denying her motion to continue the trial after two witnesses she had subpoenaed failed to appear for trial. Whether to grant or to deny a motion to continue in a termination-of-parental-rights case is within the discretion of the court and its decision will not be reversed absent a showing that the court has abused its discretion. M.S. v. State Dep't ofHuman Res., 648 So.2d 584 (Ala.Civ.App. 1994); Travis v. State Dep't ofHuman Res., 547 So.2d 571 (Ala.Civ.App. 1989); and Landers v. Ass'n forGuidance, Aid, Placement Empathy of North Alabama, Inc., 472 So.2d 1055
(Ala.Civ.App. 1985).
The two witnesses for the mother who failed to appear at trial were the mother's sister and a neighbor. The mother stated that the purpose of their testimony was to *Page 279 
establish her living arrangements and living conditions. The mother provided evidence, through her own testimony, as to her living arrangements and living conditions. Therefore, we conclude that the juvenile court did not abuse its discretion by denying the mother's motion to continue.
 II. Admissibility of Evidence
The mother next argues that the trial court erred by admitting DHR reports, which she apparently contends are inadmissible hearsay. The mother did not object to the admission of these reports; however, even if she had objected, the reports would nonetheless be admissible pursuant to § 12-15-65, Ala. Code 1975. See D.S.S. v. Clay County Dep't ofHuman Res., 755 So.2d 584 (Ala.Civ.App. 1999); and J.V. v. State Dep't.of Human Res., 656 So.2d 1234 (Ala.Civ.App. 1995).
 III. Ineffective Assistance of Counsel
We next address the mother's argument that her attorney's trial performance constituted ineffective assistance of counsel. This court has set out the analysis for an ineffective assistance-of-counsel claim in a termination-of-parental-rights case as follows:
 "[P]rocedural due process contemplates the basic requirements of a fair proceeding including an impartial hearing before a legally constituted court; an opportunity to present evidence and arguments; information regarding the claims of the opposing party; a reasonable opportunity to controvert the opposition's claims; and representation by counsel if it is desired. See Danford v. Dupree, 272 Ala. 517, 132 So.2d 734 (1961); Almon v. Morgan County, 245 Ala. 241, 16 So.2d 511 (1944); Thorne v. Thorne, supra; In re Welfare of Luscier, supra. Thus, the safeguards mandated by due process entitled a parent to the right of counsel in a permanent child deprivation proceeding. In re Welfare of Luscier, [84 Wn.2d 135, 524 P.2d 906 (1974). And inherent to a parent's right to legal representation in a deprivation hearing is the right to effective assistance of counsel. However, effective assistance of counsel does not require that a lawyer be infallible. See Taylor v. State, 291 Ala. 756, 287 So.2d 901 (1973).
 "It is the general rule that relief from a court's judgment will not be granted on the ground of incompetence or ineffective counsel merely because his opinion of appropriate trial tactics differs from the opinion of another attorney. E.g., Lynn v. Lynn, 4 Wn. App. 171, 480 P.2d 789 (1971). Instead, the test in cases of this type is whether an examination of the entire record demonstrates that the complaining party was afforded a fair trial. Lynn v. Lynn, supra."
Crews v. Houston County Dep't of Pensions Sec., 358 So.2d 451,454-55 (Ala.Civ.App. 1978).
After reviewing the record, we conclude that her attorney's trial performance did not constitute ineffective assistance of counsel. The attorney thoroughly cross-examined DHR's witnesses and elicited meaningful testimony from those of the mother's witnesses who appeared for the trial. The record indicates that the attorney adequately prepared for the trial and met with the mother to prepare her for the trial. As stated above, the attorney did not object to the admission of the DHR reports; however, also as stated above, the reports were admissible and an objection would have been properly overruled. We conclude that the attorney's representation satisfies the requirements of Crews.
 IV. Sufficiency of the Evidence
We will lastly address the mother's argument that the juvenile court's judgment terminating her parental rights *Page 280 
is not supported by the evidence. A nonparent who seeks to terminate a parent's parental rights must prove by clear and convincing evidence that the children are dependent and that there are no viable alternatives to a termination of parental rights. Ex parte Beasley, 564 So.2d 950 (Ala. 1990). The mother does not argue that viable alternatives exist. Therefore, we will address only whether DHR presented clear and convincing evidence that the children are dependent.
Section 26-18-7(a), Ala. Code 1975, states, in pertinent part:
 "If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
 "(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
 "(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child.
 "(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child. . . .
"(4) Conviction of and imprisonment for a felony.
 "(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent.
 "(6) That reasonable efforts by the [DHR] . . . leading toward the rehabilitation of the parents have failed.
". . . .
 "(8) That parental rights to a sibling of the child have been involuntarily terminated."
Section 26-18-7(b) further provides that if the child is not in the custody of the parents, the juvenile court may consider whether the parents are providing monetary support for the child, whether they are regularly exercising visitation with the child, and whether they are adjusting their "circumstances to meet the needs of the child."
DHR became involved with these children in 1997. Carol Edwards, a service supervisor with DHR, was the first caseworker. DHR placed the children in foster care in March 1997 following incidents where the mother left the children alone. The children were in foster care from March 1997 to July 2000. Edwards testified that the mother was not consistent in her scheduled contacts with DHR; that the mother moved several times; and that it was difficult to locate her at times. She did visit the children. On one occasion, the children and the mother engaged in a food fight, and the mother blamed the older child. The mother would often leave the scheduled visits early, complaining about the children's behavior. Edwards testified that although the mother had *Page 281 
attended parenting classes, she would not apply the parenting skills she learned at class.
In early summer 2000, DHR transferred the case to the permanency unit for termination of the mother's parental rights; however, the mother remarried, moved to suitable housing, and obtained steady employment. DHR placed the children in the mother's home in July 2000. Melissa White, a caseworker with DHR, was assigned to the case. White testified that the mother's situation began to deteriorate in December 2000. She had separated from her husband and had moved out of the trailer, where they had been living. She told DHR that they could take the children back but that she would not give them any clothes except what the children were wearing. The children returned to DHR's custody. White testified that DHR provided additional assistance to the mother but she would maintain employment only for days, and that she had entered into two more relationships that DHR believed were unhealthy for the children. DHR then made the decision to pursue terminating the mother's parental rights.
We conclude that DHR presented clear and convincing evidence indicating that the children are dependent. DHR had been involved with the family for more than four years before it decided to petition for a termination of the mother's parental rights. The evidence indicates that the mother never achieved a consistently stable lifestyle, housing, and employment, suitable for raising the children. The children were in foster care for 40 months before the mother was able to care for them, and she was unable to care for them for more than six months after they were placed in her home.
Therefore, we conclude that the trial court's judgment terminating the mother's parental rights is supported by the evidence.
ON REHEARING EX MERO MOTU: OPINION OF JULY 26, 2002, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
[1] The mother's attorney filed in this court a motion to withdraw, which this court granted on condition that the attorney file a statement of the issues setting out the errors the mother contends are contained in the trial court's judgment. See Anders v. California, 386 U.S. 738
(1967). The attorney filed an Anders brief, and we will address the issues stated in that brief as the mother's arguments on appeal.