THOMAS, Judge.
A.E.T., Jr. (“the father”), is incarcerated in Donaldson Correctional Facility, serving a 99-year sentence for felony murder. He is the father of A.E.T. III (“the child”), who was removed from the custody of M.M.W. (“the mother”) by the Limestone County Department of Human Resources (“DHR”) in 2006. In April 2008, DHR moved to terminate both parents’ parental rights. The mother’s parental rights were terminated in October 2008; she did not appeal. The father’s parental rights were terminated by an order dated May 27, 2009. He filed a timely appeal to this court.
The father does not challenge on appeal the establishment of grounds to terminate his parental rights. Instead, he argues first that the juvenile court abused its discretion by failing to continue the hearing on the termination-of-parental-rights petition until he could be transported to the hearing. He further argues that the evidence did not support a conclusion that no viable alternatives to termination of his parental rights existed. The father sought leave to file and is pursuing a Rule 60(b), Ala. R. Civ. P., motion based on the ineffectiveness of his trial counsel in the juvenile court.
As noted above, the father is incarcerated for a felony and is serving a 99-year prison sentence, which alone provided a ground for termination of his parental rights. See Ala.Code 1975, former § 26-lS^laXJ).[1] The record reflects that the juvenile court had ordered that the father be transported from prison to attend the hearing. However, according to a statement on the record by the juvenile court judge and a similar explanation contained *1215 in the judgment terminating the father’s parental rights, prison officials refused to transport the father pursuant to the juvenile court’s order, citing as a reason his murder conviction and lengthy sentence. The father’s trial counsel did request a continuance; however, the trial court denied it. The reason stated for denying the requested continuance was that the father’s testimony was not necessary because he had given a deposition in September 2008 in which he testified regarding the main issue before the court: potential viable alternatives for the child’s custody.
The father does not argue that due process required his presence at the hearing. He admits that the fact that he was represented by counsel and had the opportunity to present testimony through deposition satisfied the requirements of due process. See Pignolet v. State Dep’t of Pensions & Sec., 489 So.2d 588, 591 (Ala.Civ.App.1986) (holding that due-process concerns are satisfied when an incarcerated parent facing a termination of parental rights is represented by counsel and has the opportunity to present testimony through a deposition). However, the father does argue that the juvenile court abused its discretion in denying the continuance. “Whether to grant or to deny a motion to continue in a termination-of-parental-rights case is within the discretion of the court and its decision will not be reversed absent a showing that the court has abused its discretion.” S.C.D. v. Etowah County Dep’t of Human Res., 841 So.2d 277, 278 (Ala.Civ.App.2002).
We cannot agree with the father that the trial court abused its discretion in denying the requested continuance. The father asserts that his live testimony would have contained more recent information relevant to the proceedings and, thus, he says, would have been superior to the deposition testimony presented as a result of his absence. However, the testimony of the father in his deposition was confined mostly to explaining that many of his relatives were not suitable resources for the child because of their criminal histories or their absence from both the father’s and the child’s lives. The only relative that the father suggested in his deposition as an alternative custodian was D.M., who DHR investigated. The father has not specifically demonstrated how his live testimony would have been any different than the testimony he gave at the deposition, and, even if the father had provided additional information about potential alternative resources at the final hearing, the last-minute nature of any such suggestions would likely have precluded those potential resources from being considered viable alternatives. See C.T. v. Calhoun County Dep’t of Human Res., 8 So.3d 984, 989 (Ala.Civ.App.2008); B.S. v. Cullman County Dep’t of Human Res., 865 So.2d 1188, 1196-97 (Ala.Civ.App.2003) (affirming the trial court’s determination that a family member suggested as an alternative placement for the first time on the date of trial was not a viable alternative to termination of a parent’s parental rights). Thus, we find no abuse of the trial court’s discretion in its denial of the requested continuance.
The father next argues that the trial court erred when it concluded that clear and convincing evidence established the lack of a viable alternative to the termination of his parental rights. According to the father, DHR’s failure to investigate any relatives other than D.M. was a violation of its duty to initiate investigations into potentially viable alternatives. He also argues that the juvenile court lacked sufficient evidence to reject D.M. as an alternative placement for the child.
We first note that DHR does have the burden to initiate investigations of potentially viable alternative placements *1216 for children in its custody. Ex parte J.R., 896 So.2d 416, 428 (Ala.2004) (quoting D.S.S. v. Clay County Dep’t of Human Res., 755 So.2d 584, 591 (Ala.Civ.App.1999)) (“ ‘DHR — not the prospective custodian — has the burden of initiating investigations .... ’ ”)• However, the father also had a role to play in the location of viable alternative placements. “ ‘Although DHR has a responsibility to investigate alternate relative placements for a child, that obligation does not entirely alleviate the responsibility of the parent who purports to oppose the termination of his or her parental rights of making DHR social workers aware of alternative placement possibilities.’ ” J.F.S. v. Mobile County Dep’t of Human Res., 38 So.3d 75, 78 (Ala.Civ.App.2009) (quoting B.S., 865 So.2d at 1197). The father testified in his deposition about his family members. He specifically mentioned D.M. as the only relative he wanted to take custody of the child. He indicated that he had not seen several of his siblings for more than 10 years, mentioned that at least 2 of his siblings had a criminal history or were incarcerated, and also stated that 1 relative was too old and could not handle taking care of the child. Thus, DHR properly investigated the only relative that the father himself suggested out of all the relatives the father listed in his deposition. We conclude, therefore, that the DHR met its burden of investigating potential alternative placements for the child.
We now turn to the father’s argument that the juvenile court’s conclusion that no viable alternatives to termination of his parental rights existed was not supported by the evidence at trial.
“A juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights. Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990).”
B.M. v. State, 895 So.2d 319, 331 (Ala.Civ.App.2004). A juvenile court’s judgment terminating parental rights must be supported by clear and convincing evidence. Bowman v. State Dep’t of Human Res., 534 So.2d 304, 305 (Ala.Civ.App.1988). “ ‘Clear and convincing evidence’ ” is “ ‘[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.’ ” L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting Ala.Code 1975, § 6-ll-20(b)(4)). The juvenile court’s factual findings in a judgment terminating parental rights based on evidence presented ore tenus are presumed correct. R.B. v. State Dep’t of Human Res., 669 So.2d 187 (Ala.Civ.App.1995). Furthermore, when the juvenile court has not made specific factual findings in support of its judgment, we must presume that the juvenile court made those findings necessary to support its judgment, provided that those findings are supported by the evidence. D.M. v. Walker County Dep’t of Human Res., 919 So.2d 1197, 1210 (Ala.Civ.App.2005).
As noted above, DHR investigated D.M. as a potential placement for the child. Her home study was favorable. According to the only witness to testify at the trial, the most recent DHR caseworker, Kimberly Holder, the child had stated a preference to remain in the custody of the foster parents. Holder said that she had relayed the child’s preference to D.M., who had responded by saying that she wanted whatever was best for the child, even if that meant that he remained with the fos *1217 ter parents. Holder further explained that the foster parents did not intend to adopt the child but had agreed to continue to serve as a long-term foster-care placement for the child.
Based on the above-stated evidence, the juvenile court rejected D.M. as a placement alternative, thus concluding that no viable alternatives to termination of the father’s parental rights existed. In support of the conclusion that no viable alternatives existed, the judgment recites the fact that the child prefers to remain in long-term foster care with the foster parents. The juvenile court’s judgment also states that the child had never met D.M. However, the record contains no testimony from Holder to that effect, and, in fact, the father testified in his deposition that D.M. had established some type of relationship with the child at some point. Thus, the juvenile court’s finding that D.M. had never met the child is not supported by clear and convincing evidence, and we will not consider that finding as a basis for the juvenile court’s rejection of D.M. as a viable alternative.
Thus, we are confronted with the question whether the existence of D.M. as a potentially viable placement alternative prevents the termination of the father’s parental rights. There is no question that the reunification of the father and the child is not a foreseeable possibility. The father does not challenge the establishment of grounds to terminate his parental rights, and his long-term imprisonment virtually guarantees that he will not be in a position to serve as a the child’s parent for the foreseeable future. In such a case, is the fact that a possible alternative placement might exist sufficient to prevent termination of a parent’s parental rights?
In D.M.P. v. State Department of Human Resources, 871 So.2d 77, 94 (Ala.Civ.App.2003), then Judge Murdock authored a plurality opinion in which one Judge concurred and three Judges concurred in the result and concluded that the existence of a viable alternative was not an absolute bar to termination of parental rights in cases in which the parent was shown to be “irremediably unfit.” He reasoned that the basis for the requirement that viable alternatives be pursued before the termination of parental rights grew out of the strict-scrutiny analysis that had to be applied to any state action interfering with the fundamental right of a parent to the care, custody, and companionship of his or her child. D.M.P., 871 So.2d at 92. He posited that
“if there is a custodial arrangement that is viable — that is, a custodial arrangement involving a fit custodian who can provide a stable environment meeting the child’s physical, financial, and emotional needs pending the rehabilitation/ reunification process12 — the teaching of Roe [v. Conn, 417 F.Supp. 769 (M.D.Ala.1976),] and Miller [v. Alabama Department of Pensions & Security, 374 So.2d 1370 (Ala.Civ.App.1979),] is that this alternative must be pursued. This result is dictated by and consistent with the application of the two prongs of strict-scrutiny analysis (‘compelling state interest’ and ‘less drastic measures’) and with the State’s ultimate concern for the best interests of the child. It is consistent with the latter because of the legal presumption that a child’s best interest and welfare are served by remaining in the custody of a fit parent.13 Also, this result is consistent with the scheme contemplated by Ala.Code 1975, § 12-15-65, § 12-15-71, and § 26-18-7 and with many of our caselaw pronouncements concerning so-called ‘viable alternatives.’ See, e.g., Ex parte State Dep’t of Human Res., 624 So.2d 589, 592-93 (Ala.1993) (‘[W]hen the State is petitioning to ter *1218 minate parental rights, the trial court must find from clear and convincing evidence that the child is dependent and ... the court must determine whether all viable alternatives to termination have been explored.’ (emphasis added)); Ex parte Ogle, 516 So.2d 243, 244 (Ala.1987) (noting that a schizophrenic parent was making progress towards rehabilitation, but was not yet capable of assuming custody of the child, and explaining that ‘[b]efore parental rights may be terminated, all viable alternatives to termination of those rights must be examined to ensure that there is no less drastic measure available’); Moore v. State Dep’t of Pensions & Sec., 470 So.2d 1269, 1270 (Ala.Civ.App.1985) (‘If dependency is found, the court must then find that there exists no viable alternative to termination of the parent’s custodial rights.’ (citing Glover v. Alabama Dep’t of Pensions & Sec., 401 So.2d 786 (Ala.Civ.App.1981) (emphasis added))); see also M.H. v. Calhoun County Dep’t of Human Res., 848 So.2d 1011, 1013 (Ala.Civ.App.2002) (the trial court must ‘determine that there exists no alternative to termination’ (emphasis added)); M.H.J. v. State Dep’t of Human Res., 785 So.2d 372 (Ala.Civ.App.2000) (same); W.F. v. State Dep’t of Human Res., 704 So.2d 483 (Ala.Civ.App.1997) (same); L.A.G. v. State Dep’t of Human Res., 681 So.2d 596, 598 (Ala.Civ.App.1996) (‘the court must consider and reject all alternatives to termination of parental rights’).
“Conversely, where it is demonstrated that the parents are not capable of being rehabilitated or that the ‘conduct or condition’ of the parents that makes them unfit to retain custody of their children ‘is unlikely to change in the foreseeable future’ or where, as explained above, reunification is otherwise not an appropriate goal, obviously no alternative can be considered viable to the end of returning the child to a normal custodial relationship with his or her parent. The State’s failure, therefore, to pursue some alternative to termination that might exist in such a case would not necessarily14 be fatal to its petition for termination of a parent’s rights.15 This understanding of viable alternatives likewise has been well recognized in our cases.
“12 Obviously, in most cases where reunification is a reasonable prospect within the ‘foreseeable future’ there will be a viable placement alternative that will allow the necessary time for the rehabilitation/reunification process to be accomplished.
“13 ‘The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that this primary parental right of custody is in the best interest and welfare of the child as a matter of law.’ Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983). ‘The law devolves the custody of infant children upon their parents, not so much upon the ground of natural right in the latter, as because the interests of the children, and the good of the public, will, as a general rule, be thereby promoted. It is a fair presumption, that so long as children are under the control of their parents, they will be treated with affection, and their education and morals will be duly cared for.’ Striplin v. Ware, 36 Ala. 87, 89 (1860) (quoted with approval in Ex parte D.J., 645 So.2d 303 (Ala.1994)).
“14 See discussion, infra, of the ‘second prong* in Ex parte Beasley[, 564 So.2d 950 (Ala.1990),] and the obligation of trial courts to ‘consider’ alternatives *1219 to termination that might be in the ‘best interests’ of a child.
“15 If this understanding were not correct (that is, if a termination could not occur whenever there exists some family resource or other alternative custodial arrangement, irrespective of the irremediability of an unfit parent), a fit custodial parent could never successfully seek the termination of the other parent’s parental rights. See generally Ala. Code 1975, § 26 — 18—5(a); Ex parte Johnson, 474 So.2d 715 (Ala.1985) (concluding that a parent could petition to terminate the other parent’s parental rights under the [former Alabama Juvenile Justice Act], even before the enactment of the [1984 Child Protection Act]).”
D.M.P., 871 So.2d at 91-93.
Ultimately, then Judge Murdock concluded:
“In other words, once ‘the interests of the child and the natural parents ... diverge’ because of irremediable parental unfitness, the rationale for the legal presumption that custody in the natural parent is in the best interest of the child no longer exists. At that juncture, the State may proceed, unaffected by a parental presumption, to determine simply what disposition of the child would then be in his or her best interest. The possibility of some custodial arrangement that would be a suitable alternative to the termination of parental rights no longer constitutes an absolute bar to termination. As discussed below, however, the State may still consider such alternatives in determining what disposition is in the best interest of the child.
“In short, so long as reunification with the parents is a foreseeable likelihood, the State has no choice but to consider and pursue all viable alternatives to such termination. Once ‘grounds for termination’ exist, however, reunification by definition is no longer a foreseeable’ alternative, the constitutional and state-law presumption in favor of the natural parents is lost, the ‘interests of the child and the natural parents ... diverge, ’ and the only remaining consideration is the direct question, unencumbered by a parental presumption, of what is in the child’s ‘best interest.’ ”
Id. at 94 (emphasis added).
Applying that rationale to the case before us today yields the conclusion that the existence of D.M. as a potentially viable placement alternative would not, in and of itself, prevent the juvenile court from terminating the. father’s parental rights, if reunification of the father and the child were no longer a foreseeable alternative. Id. The evidence at trial clearly established that grounds for termination of the father’s parental rights existed and that reunification of the father and the child was not foreseeable in the reasonably near future. Thus, we conclude that the existence of D.M. as a potential viable placement alternative was not a bar to the termination of the father’s parental rights. See id.
However, as then Judge Murdock explained in D.M.P., we must next consider whether the juvenile court could have determined that termination of the father’s parental rights was in he child’s best interest despite the possibility of utilizing D.M. as an alternative placement. Id. The evidence before the juvenile court indicated that the child preferred to remain in the custody of his foster parents, a placement alternative that DHR approved. This court has permitted a juvenile court to consider the child’s wishes and “ ‘the retention of the child in the same environment’ ” as factors to be considered in a termination-of-parental-rights proceeding. *1220 See T.T. v. State Dep’t of Human Res., 796 So.2d 365, 368 (Ala.Civ.App.2000); see also M.W. v. Houston County Dep’t of Human Res., 773 So.2d 484, 487 (Ala.Civ.App.2000) (indicating that a child’s need for permanency and stability must overcome a parent’s fruitless attempts at rehabilitation and noting that the child in that appeal had “himself ... communicated the desire for permanency and stability in his life”). Furthermore, the evidence also revealed that the father had seen the child only once, when the child was an infant. The evidence is without dispute that the father and the child had never developed a parent-child relationship because of the father’s long-term incarceration.
In addition, neither DHR nor the father called D.M. as a witness at trial, and the father presented no evidence regarding D.M.’s willingness or ability to serve as a placement for the child. The only information regarding D.M. in the record is that her home study had been favorable and that she wanted the child’s best interest to be served, even if that meant that he would remain in the custody of his foster parents.
Like the juvenile court in D.M.P., the juvenile court in the present case had no evidence before it that would show that placement with D.M. would be in the child’s best interest. See D.M.P., 871 So.2d at 97. Moreover, the evidence regarding the lack of a relationship between the father and the child would not support a conclusion that the termination of the father’s rights was not in the best interest of the child because of a significant emotional bond between the two; nor was there evidence of another factor militating against the termination of the father’s rights. See id. at 95 n. 17. Thus, we conclude that the juvenile court’s determination that the child’s interests would best be served by termination of the father’s parental rights is supported by the evidence.
In conclusion, we reject the father’s argument that the juvenile court abused its discretion in denying him a continuance to ensure his presence at the trial. We also reject the father’s argument that DHR failed to properly locate and investigate viable alternative placements for the child. Furthermore, because we have determined that the existence of D.M. as a potentially viable alternative placement for the child is not a bar to the termination of the father’s parental rights, see D.M.P., 871 So.2d at 94, and because we have determined that the evidence supports the conclusion that termination of the father’s parental rights is in the child’s best interest despite the possibility that placement with D.M. might be an option, see id. at 97, we conclude that the juvenile court’s judgment terminating the father’s parental rights should be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. By Act No. 2008-277, Ala. Acts 2008, the Alabama Legislature, among other things, amended and renumbered Ala.Code 1975, § 26-18-7, sind enacted the Alabama Juvenile Justice Act ("AJJA”), codified at Ala.Code 1975, § 12-15-101 et seq. The effective date of the AJJA is January 1, 2009.