MOORE, Judge.
H.B. (“the mother”) timely appeals from a judgment entered by the Cullman Juvenile Court (“the juvenile court”) terminating her parental rights to Ca.N. (“the child”) and awarding the sole physical and legal custody of the child to J.N., the child’s paternal grandfather, and C.N., the child’s paternal stepgrandmother, who are hereinafter referred to collectively as “the paternal grandparents. We affirm the juvenile court’s judgment.
The judgment at issue provides, in pertinent part:
“1. [The child] was bom on October 8, 2012 to [the mother] and [Z.N. (‘the father’) ]. ;
[[Image here]]
“4. [The child] was declared depen-dant [sic] after having been born positive for methadone, resulting from [the mother]’s use. After treatment at Children's] Hospital in Birmingham, Alabama, the child was allowed to go home with [the mother] for one night, but the [Cullman County] Department of Human Resources [(‘DHR’)] obtained a required safety plan which placed the child and mother in the home of. [the paternal grandparents] ....
“[5]. [The mother] subsequently plefaded] ‘Guilty’ to charges of Child Endangerment. In addition, the evidence showed that [the mother] had lost custody of an older child whose whereabouts are as yet unknown by [the mother],
“[6]. [S.F. (‘the paternal grandmother’) ] shared custody of the child, along with [the paternal grandparents,] with physical possession alternating between the two homes virtually since his birth. Clearly all three grandparents love this child deeply.
“[7], Each of the parents, however, have made scant, if any progress toward rehabilitating themselves as necessary to regain custody of [the child]. The hearing in this matter has been scheduled for weeks, yet when requested by the Court to submit to a drug screen, the father refused—a tantamount admission that he would not pass such a screen. The mother did submit, but her screen showed her continued use of methadone, the drug which was the precipitating cause of the child’s dependency determination. [The mother] 'testified to more than one effort to discontinue such drug, but has not done so. In addition, she has otherwise failed to adjust her circumstances in order to parent [the child]..
“[8]. The father , spent several months in the State Penitentiary, has not maintained employment, and appears to still be using illegal drugs. In addition, he and [the mother] clearly intend to remain together, a fact which does not reassure the Court. Their relationship and conduct as a parental unit shows a continuing unwillingness to adjust their circumstances to meet the needs of [the child].
“[9]. Therefore, the Court does find, from clear and convincing evidence^] that [the child] is dependent and in need of care and protection such that the parental rights of [the mother] and [the father] should be terminated.
' “[10]. The Court must determine whether a viable alternative exists which would make termination unnecessary. The Court finds no such alternative.
'' “[11]. The mother and [the father] were directed to have only strictly supervised visitation, but evidence convinces the Court that [the paternal grandmother] has not been compliant either with the letter or spirit of such condition. Evidence reveals that she allowed significant contact between [the *208 mother, the father, and the child] and apparently facilitated the child’s knowledge of his parents’.residence, schedule, pictures and phone contact—all in contravention of the Court’s prior Orders. ■.Thus, the Court finds, by clear and convincing evidence, that continued .placement with [the paternal grandmother] is not a viable alternative to termination of parental rights.
“[12]. [The paternal grandparents], on the other hand, have provided a stable, loving home for [the child] , and sought out any therapy, treatment or other helpful assistance in securing his welfare. The disruptive nature of the parties’ current schedule is, in the Court’s opinion, no longer in the child’s best interests. [The paternal grandparents] have, in the past, pursuant to Court Order, attempted to provide opportunities for the parents to rehabilitate themselves, provided a home in which the parent-child relationship could be maintained in hopes of reunification. Such efforts have not been met with any meaningful cooperation by either parent.
Therefore, the Court finds, from clear and convincing evidence^] that no reasonable viable alternative exists save and except termination of parental rights of both parents.”
The judgment terminated the parental rights of the mother and the father and awarded sole legal and physical custody of the child to the paternal grandparents.[1]
On appeal, the mother argues solely that the juvenile court erred in terminating her parental rights because, she says, “parental rights cannot be terminated where viable alternatives to termination exist, the existence of viable relative resources being one such alternative.” Specifically, the mother maintains that, as a matter of law, a juvenile court cannot terminate parental rights when the-child at issue can be placed into the custody of fit and willing relatives, such as the paternal grandparents in this case. .The mother argued this point to the juvenile court in a motion to dismiss at the opening of the trial, in a motion for a judgment on partial findings at the close of the presentation of the evidence by the paternal grandparents, which was renewed at the end of the trial, and again in a rnotion to alter, amend, or vacate the judgment. The juvenile court rejected the argument on all occasions. Because that argument raises a pure question of law, we review the judgment of the juvenile court de novo without a presumption of correctness. See S.G. v. Barbour Cty. Dep’t of Human Res., 148 So.3d 439, 444 (Ala. Civ. App. 2013).
A natural'parent has a fundamental right to the custody of his or her child, which right may not' be severed by state-government interference without due process as mandated by the Fourteenth Amendment to the United States Constitution. See Ex parte Beasley, 564 So.2d 950, 953-54 (Ala. 1990). As a matter of substantive due process, a state can terminate parental, rights only in order to protect a child from parental abuse, neglect, or other harm, and only when less drastic measures would be unavailing. See Hunley v. Houston Cty. Dep’t of Pensions & Sec., 365 So.2d 81, 84 n.1 (Ala. Civ. App. 1978) (applying reasoning of Roe v. Conn, 417 F.Supp. 769, 779-80 (M.D. Ala. 1976)). Based on that reasoning, our supreme court has declared that a juvenile court should not terminate parental rights when a viable alternative exists. See Ex parte Beasley, 564 So.2d at 955. In Ex parte Ogle, 516 So.2d 243, 243 (Ala. 1987), our supreme court held that, when it is in the best interests of the child, placement with *209 a suitable relative can constitute a viable alternative to termination of parental rights. However, the mere feasibility of relative placement does not ipso facto prevent termination of parental rights under Alabama law.
In Miller v. Alabama Department of Pensions & Security, 374 So.2d 1370 (Ala. Civ. App. 1979), this court held that a juvenile court should exhaust every available means to protect a child before permanently removing the child from his or her parents’ custody.
“For example, á court would certainly consider returning the child to parental custody on a trial basis subject to certain definite conditions being met and subject to supervision by DPS [Department of .Pensions and Security] workers or other trained personnel; or temporary custody in a foster home with specific visitation with the child and conduct requirements to be met by parents; or that the parents are to be deprived of custody temporarily pending a correction of deficiencies in the home environment that were having or would have a harmful éffect on the child should the child be placed back in the family relationship.”
374 So.2d at 1374. In D.M.P. v. State Department of Human Resources, 871 So.2d 77, 91 (Ala. Civ. App. 2003) (authored by Murdock, J., with Crawley, J., concurring and Yates, P.J., and Thompson and Pittman, JJ., concurring in the result), Judge Murdock explained that, consistent with Miller, a juvenile court cannot terminate a parent’s parental rights if a temporary alternative custodial arrangement can safeguard the child while the parent undergoes rehabilitation toward family reunification. However, once it becomes clear that an unfit parent cannot or will not reform and that continued rehabilitation efforts will not result in family reunification in the foreseeable future, a juvenile court may terminate parental rights in order to provide a child a permanent alternative custodial arrangement if doing so would be in the best interests of the child.
“In other words, once ‘the interests of the child and the natural parents ... diverge’ because of irremediable parental unfitness, the rationale for the legal presumption that custody in the natural parent is in the best interest of the child no longer exists.. At that juncture, the State may proceed, unaffected by a par rental presumption, to determine simply what disposition of the child would then be in his or her best interest. The possibility of some custodial arrangement that would be a suitable alternative to the termination of parental rights no longer constitutes an absolute bar to termination.” ■
D.M.P., 871 So.2d at 94 (quoting Santosky v. Kramer, 455 U.S. 745 at 760, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)) (emphasis added).
In A.E.T. v. Limestone County Department of Human Resources, 49 So.3d 1212, 1219 (Ala. Civ. App. 2010), a majority of this court adopted the reasoning of Judge Murdock as set forth in D.M.P. In A.E.T., the father, a convicted murderer serving a 99-year sentence, proffered D.M. as a suitable relative to assume custody of the child. Home studies revealed that D.M. was, in fact, a fit and willing relative and a viable placement for the child. Based on that undisputed evidence, this court framed the issue bn appeal as “whether the existence of D.M. as a potentially viable placement alternative prevented] the termination of the father’s parental rights.” 49 So.3d at 1217. Relying extensively on D.M.P., this court concluded in A.E.T. that, when family reunification is not reasonably foreseeable, the mere existence of a viable custodial placement alter *210 native “would not, in and of itself, prevent [a] juvenile court from terminating [a parent’s] parental rights .... ” 49 So.3d at 1219. Under A.E.T., a juvenile court may terminate parental rights if the juvenile court determines that viable options to termination do not serve the best interests of the child.
Although A.E.T. involved an incarcerated parent, in A.F. v. Madison County Department of Human Resources, 58 So.3d 205 (Ala. Civ. App. 2010), this court extended the holding in A.E.T. to apply equally to a mother who had “failed- to adjust her circumstances and resolve her substance-abuse problem over a four-year period.” 58 So.3d at 214. In A.F., the mother at issue in that case argued that her parental rights could not be terminated because the half brother of the father of the child and the wife of the half brother had not been excluded as potential custodians for the child by the Madison County Department of Human Resources and because the juvenile court had commented, after terminating the mother’s parental rights, that it would consider placing the child with those relatives. This court reasoned in A.F. that, once the juvenile court had determined that the mother was not likely to overcome her drug addiction so as to be in a position to safely assume custody of the child within the foreseeable future, the juvenile court “was no longer required to consider whether a viable placement alternative existed before terminating the mother’s parental rights.” Id. at 215. Thus, this court held, the mere fact that the child could possibly be placed with relatives did not prevent the juvenile court from entering a judgment terminating the parental rights of the mother to the child.
This case differs from A.E.T. and A.F, because, in this case, the juvenile court actually awarded the paternal grandparents sole custody of the child, coincidentally with its judgment terminating the mother’s parental xdghts. The same analysis applies, however. The mere fact that the juvenile court concluded that the paternal grandparents could provide the child a safe and proper home did not, in and of itself, bar the juvenile court from terminating the mother’s parental rights. In its judgment, the juvenile court found that the child originally had been placed with the paternal grandparents for the purpose of facilitating the rehabilitation of the mother but that the mother had not meaningfully cooperated by adjusting her circumstances to meet the needs of the child. The juvenile court further determined that, at the time of the trial and despite the passing of nearly four years, the mother remained in the same condition and in the same circumstances that had led to the original separation of the family unit and that her condition and circumstances would not likely change in the foreseeable future. Based on those findings, which are not contested by the mother, the juvenile court, in acting for the best interests of the child, could lawfully terminate the parental rights of the mother, despite its other finding that the paternal grandparents could adequately care for the child.
The mother does not make any other argument for reversal of the juvenile court’s judgment. Her sole argument lacking any merit, we affirm the judgment.
AFFIRMED.
Thompson, P.J., and Pittman and Donaldson, JJ., concur.
Thomas, J., recuses herself.

. The father did not appeal from the judgment.